DECISION
Relator, Daniel Chesbrough, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its July 27, 2001 order denying relator's application for temporary total disability compensation and respondent's February 15, 2000 order denying his application for temporary total disability compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator failed to establish that respondent-commission had abused its discretion and that this court should deny the requested writ.
Relator filed objections to the decision of the magistrate essentially rearguing issues already adequately addressed in that decision. For the reasons stated in the decision of the magistrate, the objections are overruled.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objections overruled; writ of mandamus denied.
TYACK, P.J., and DESHLER, J., concur.
 IN MANDAMUS
Relator, Daniel Chesbrough, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its July 27, 2001 order denying relator's application for temporary total disability ("TTD") compensation. Relator also requests a writ of mandamus ordering the commission to vacate its February 15, 2000 order denying his application for TTD compensation.
Findings of Fact:
1. This is the third time relator has brought a mandamus action in this court challenging the commission's original 1998 denial of his motion for TTD compensation. See State ex rel. Chesbrough v. Indus. Comm. (Aug. 3 1999), Franklin App. No. 98AP-1013, unreported (Memorandum Decision) ("Chesbrough I"), and State ex rel. Chesbrough v. Indus. Comm. (April 4, 2001), Franklin App. No. 00AP-539, unreported (Memorandum Decision) ("Chesbrough II").
2. Relator sustained his first industrial injury, which is the cause of these actions, on February 17, 1993, and his claim was originally allowed for "sprain lumbar region."
3. By order dated November 27, 1995, a district hearing officer ("DHO") found that relator's sprain lumbar region had reached maximum medical improvement ("MMI") pursuant to the report of Dr. Kiva Shtull.
4. On January 5, 1996, relator's treating physician, Dr. Dean J. Gray, indicated that relator had preexisting arthritis in his lumbar region, which had been aggravated by the 1993 injury.
5. In a letter dated January 23, 1996, Dr. Gray indicated that relator's allowed condition of lumbar sprain had reached MMI but that relator would benefit from further treatment.
6. The November 27, 1995 DHO order was affirmed by a staff hearing officer ("SHO") on January 26, 1996.
7. On April 17, 1996, relator requested that his 1993 claim be additionally allowed for aggravation of preexisting arthritis of the lumbar spine.
8. By order dated September 18, 1996, the Ohio Bureau of Workers' Compensation ("BWC") agreed and relator's 1993 claim was additionally allowed for "aggravation of pre-existing arthritis of the lumbar spine." This order was ultimately affirmed by an SHO order dated December 19, 1996.
9. On December 27, 1996, relator filed an FROI-1 form alleging a new injury on December 27, 1994.
10. The BWC denied the claim on the basis it had not been filed within two years of the date of injury.
11. By letter dated December 30, 1996, Dr. Gray opined that, in the 1993 claim, relator's degenerative arthritis changes warranted continued treatment since it is aggravated by the lumbar strain/sprain injury.
12. On March 14, 1997, Dr. Gray issued a letter pertaining to the 1994 claim asserting that relator was temporarily and totally disabled as a result of thoracic strain/sprain.
13. On April 7, 1997, a DHO modified the January 17, 1997 BWC order and found that relator's FROI-1 form had been timely filed. However, the DHO denied relator's request for an allowance in the claim on grounds that relator had failed to sustain his burden of proving that the alleged conditions of thoracic strain/sprain and aggravation of preexisting lumbar strain/sprain were causally related to the December 27, 1994 incident at work.
14. By order dated May 19, 1997, an SHO vacated the April 7, 1997 DHO order and, at that time, relator's 1994 claim was specifically allowed for the following conditions: "thoracic strain/sprain" and "aggravation of pre-existing lumbar strain/sprain."
15. By order mailed June 12, 1997, the commission refused further appeal.
16. On June 30, 1997, relator requested that TTD compensation be paid in the 1994 claim from January 9, 1995 through an estimated return-to-work date of January 1, 1998. On that form, Dr. Gray indicated that the allowed condition, which was currently preventing relator from working, was the lumbar strain/sprain and that he was also treating relator for the condition of thoracic strain/sprain.
17. Relator then filed another request seeking payment of TTD compensa-tion from October 3, 1995 on and submitted in support, the June 30, 1997 C-84 completed by Dr. Gray as well as Dr. Gray's letter dated December 30, 1996, referencing the 1993 claim and indicating that relator's degenerative arthritis changes required continued treatment.
18. By order dated January 22, 1998, the BWC referred the matter of relator's request for TTD compensation to the commission for its consideration.
19. On February 7, 1998, relator submitted another C-84 requesting TTD compensation from January 9, 1995 through an estimated return-to-work date of January 1, 1998, in the 1994 claim. Dr. Gray again listed lumbar strain/sprain as a condition which was currently preventing relator from returning to work and that he was also treating relator for thoracic strain/sprain.
20. By order dated February 24, 1998, a DHO denied relator's request for TTD compensation on the basis that relator had not met his burden of proving that he was temporarily and totally disabled due to the allowed conditions of thoracic sprain/strain and aggravation of preexisting lumbar strain/sprain. The DHO also indicated that there were no office notes showing treatment and detailing how the allowed conditions prevented relator from returning to work.
21. Thereafter, relator submitted Dr. Gray's office notes detailing treatment from November 1994 through March 1998.
22. By order dated March 30, 1998, an SHO affirmed the February 24, 1998 DHO order and denied the request for TTD compensation after reviewing the office notes submitted by relator. The SHO stated as follows with regard to those notes (this is the order which ultimately became the contested order in all three of these mandamus actions):
 The Staff Hearing Officer finds that the office notes submitted 03/27/1998 do not contain persuasive supportive evidence and objective findings to support the payment of compensation for the period requested as due solely to the 12/27/1994 injury.
23. On April 10, 1998, Dr. Gray issued another report referring to the 1994 injury asserting as follows:
 As the treating physician of the above captioned patient it is my medical opinion beyond reasonable doubt that Mr. Chesbrough is temporarily and totally disabled due to the industrial injury on 12-27-94. This is due to a thoracic strain/sprain 847.1 aggravating a pre-existing lumbar strain/sprain 847.2.
24. By order mailed April 16, 1998, the commission refused relator's further appeal from the SHO order of March 30, 1998.
25. On April 24, 1998, relator submitted a new C-84 form from Dr. Gray requesting TTD compensation from December 31, 1997 through an estimated return-to-work date of October 1, 1998. This time, Dr. Gray indicated that the condition currently being treated which prevented relator from returning to work was the thoracic strain/sprain aggravating the preexisting arthritis of the lumbar strain and indicated that he was also treating relator for the lumbar strain/sprain. (This is the first time Dr. Gray indicated, on a C-84, that relator was temporarily totally disabled as a result of the allowed conditions in the 1994 claim.)
26. Relator filed his first mandamus action in this court challenging the commission's March 30, 1998 denial of his application for TTD compensation for the time period including October 3, 1995 through January 1, 1998. In Chesbrough I, rendered in August 1999, this court granted a writ of mandamus ordering the commission to vacate its order denying relator's application for TTD compensation and ordering the commission to explain why it found the office notes of Dr. Gray not to be persuasive in supporting relator's motion.
27. Thereafter, on November 2, 1999, an SHO again denied relator's request for TTD compensation from October 23, 1997 on. Nowhere in that order did the SHO address Dr. Gray's office notes and whether they supported relator's application. Instead, the SHO noted there was conflicting evidence from Dr. Gray as to whether relator's condition had reached MMI and noted there was no mention of the thoracic condition as being disabling until April 1998. In this order, the SHO also considered relator's additional requests for TTD compensation from December 31, 1997 and continuing. The SHO specifically declined to rule on this time period as follows:
 Given the distinctive nature of the period commencing 12/31/1997, the Staff Hearing Officer does not rule on such period, or C-84, in that the parties have not had the opportunity to address temporary total disability upon such basis, nor has the BWC ruled there on as provided by the Staff Hearing Officer order of 05/19/1997.
28. On November 29, 1999, relator renewed his request for TTD compensation beginning December 31, 1997.
29. Relator's further challenge to the November 2, 1989 SHO order denying him TTD compensation beginning October 3, 1995, was refused by order of the commission mailed November 20, 1999.
30. Thereafter, relator filed his second mandamus action in this court (Chesbrough II) challenging the commission's denial of his application for TTD compensation beginning October 3, 1995.
31. While his mandamus action was pending in this court, the BWC granted his November 19, 1999 request for TTD compensation beginning December 31, 1997.
32. While his mandamus action was still pending in this court, a DHO vacated the December 3, 1989 BWC order and denied relator's request for TTD compensation beginning December 31, 1997, by an order dated January 6, 2000.
33. Again, while his mandamus action was pending in this court, an SHO vacated the January 6, 2000 DHO order in an order dated February 15, 2000. However, the SHO went on to deny relator's request for TTD compensation from December 31, 1997 and filed November 19, 1999, for the following reasons:
 The claimant is found to have reached maximum medical improvement on all allowed conditions at least as of the 12/31/1997 date that he is requesting for payment of temporary total disability compensation.
 This finding is based on claimant's own persuasive testimony at hearing. He testified that he has treated with Dr. Gray for his mid and low back since the 1994 date of injury to the present. The treatment has been the same (chiropractic manipulation; ultrasound; electrical stimulation). He testified that for the first few years, he saw Dr. Gray twice a week. [F]or the next few years, he was Dr. Gray once per week. For the past year, he has seen Dr. Gray three times per month instead of four times per month. Almost six years of continual chiropractic treatment for a lumbar and thoracic sprain/strain. The claimant testified that no doctor has recommended surgery or alternative treatment; and that he is satisfied with his treatment.
 Despite continual chiropractic treatment, claimant testified that his low and mid back strain/sprain has not improved. They are both "extremely disabling." "He is unable to walk." He has been unable to work in any capacity since the 1994 date of injury. He testified that his "pain and complaints have been this way since 1994."
 A page-by-page review of all records of Dr. Gray in this file affirm that treatment and complaints in this claim have remained substantially the same since 1994. There are no plans to change the treatment in this almost six year old sprain/strain claim.
 Based on the above, the blanket C-84's of Dr. Gray are not persuasive to start payment of temporary total as of 12/31/1997. The claimant had reached maximum medical improvement on the allowed conditions.
 While there is no medical report directly opining that temporary total compensation should not be paid, that does not mean that Dr. Gray's reports are a persuasive basis upon which to start temporary total payment as of 12/31/1997. This is particularly true when claimant's own testimony per-suasively establishes that nothing has really changed since 1994.
34. Again, while the other matter was still pending in this court further appeal was refused by order of the commission mailed March 4, 2000.
35. On April 24, 2001, this court issued its decision in Chesbrough II, and issued a limited writ of mandamus ordering the commission to explain why the treating physician's office notes are not persuasive on the causal relationship issue and that the order either grant or deny relator's request for TTD compensation from October 3, 1995.
36. On July 3, 2001, the commission issued an order vacating the November 2, 1999 SHO order only insofar as that order addressed the issue of TTD compensation. As such, the commission's denial of TTD compensation from October 3, 1995 was vacated; however, the question which the commission left open, whether relator was entitled to TTD compensation from December 31, 1997 on, was left intact.
37. Thereafter, on July 27, 2001, an SHO issued an order which denied relator's request for TTD compensation beginning January 3, 1995 and which, in conformity with Chesbrough and Chesbrough II, finally addressed the issue of Dr. Gray's office notes. TTD compensation from October 3, 1995 on was denied for the following reasons:
 * * * The claimant's request for temporary total compensation from 10/03/1995 forward is denied for several reasons:
 (a) Since the C-84 by Dr. Gray signed on 06/30/1997 attributed temporary total disability to lumbar strain/sprain, the Staff Hearing Officer finds that this C-84 conflicts with the 01/23/1996 report by Dr. Gray in the 1993 claim file. That report indicated that claimant had reached maximum medical improvement for the lumbar condition in that claim. It is noted that the instant claim involves an industrial injury of 12/27/1994. Yet, Dr. Gray, on 01/23/1996, opined that the claimant's lumbar condition had reached maximum medical improvement. Therefore, the Staff Hearing Officer finds that the C-84 signed by Dr. Gray on 06/30/1997 is not some evidence upon which to grant temporary total disability compensation. There is nothing from Dr. Gray which explains the discrepancy between the 01/23/1996 letter and the aforementioned C-84. In other words, in 1996 Dr. Gray stated that claimant was maximum and medically improved. A year later Dr. Gray indicates that claimant is temporarily and totally disabled from 01/09/1995 to 01/01/1998, a period which overlaps the 01/23/1996 letter.
 (b) The C-84 signed by Dr. Gray on 02/07/1998 is found not to constitute "some evidence" upon which to grant temporary total compensation from 01/09/1995 to 07/01/1998 (the period listed on the C-84) for the same reason cited in paragraph A. It is noted that this C-84 attributed temporary total disability to the lumbar strain/sprain. Both C-84s do note that claimant is being treated for the thoracic strain/sprain but does not attribute any temporary total disability to this condition.
 (c) Office notes have been submitted to the file to support the above request for temporary total disability compensation. It is noted that these office records were submitted into the file for the 03/20/1998 Staff Hearing Officer hearing. The courts have decided that the Industrial Commission has not adequately explained why these records are not persuasive evidence upon which to grant temporary total disability compensation for the aforementioned period (10/03/1995 forward). It is noted that these office notes are very difficult to read and are nearly illegible. The Staff Hearing Officer conducted a page by page review of these office notes with respect to the issue of temporary total disability compensation. It is noted that many office entries are in the "SOAP" format.
 These notes, as best as the Staff Hearing Officer can make them out due to the poor handwriting, merely discuss the claimant's condition and ongoing treatment. It documents treatment on a very regular basis. These office notes do not offer any opinion or insight into the claimant's temporary total disability. As stated above, these office notes appear to be purely medical in content. These office notes do not reveal whether claimant is improving or whether claimant is deriving any benefit from treatment. Indeed, the 02/15/2000 Staff Hearing Officer order indicates:
 "Despite continual chiropractic treatment, claimant testified that his low and mid back strain/sprain has not improved. They are both "extremely disabling." "He is unable to walk." He has been unable to work in any capacity since the 1994 date of injury. He testified that his "pain and complaints have been this way since 1994."
 This confirms the Staff Hearing Officer finding that the claimant's condition has been more or less permanent since 1994 and which falls into line with Dr. Gray's 01/23/1996 report which indicates claimant had reached maximum medical improvement. In other words, the treatment notes (that which can be read) indicates treatment of such mind numbing regularity that it leads to one conclusion: that claimant's condition is not temporary. So the treatment records are not persuasive evidence to support claimant's request for temporary total disability for the aforementioned period because (a) they are largely illegible; (b) there are no opinions with respect to temporary total disability in these notes and (c) the treatments are of such regularity that it leads to the conclusion that claimant's condition is not temporary and lends support to Dr. Gray's 01/23/1996 report.
38. By order mailed August 18, 2001, relator's further appeal was refused.
39. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
Although this is the third time which this case has been before this court and although there are several orders from the commission granting, then denying relator's request for TTD compensation, the issues can be confined to two: (1) whether the commission's order dated July 27, 2001, complies with this court's entries in Chesbrough I and Chesbrough II, which ordered the commission to explain why Dr. Gray's office notes were not found to be persuasive to support relator's request for TTD compensation from October 3, 1995, and does the commission's order otherwise comply with the law; and (2) whether the commission's order dated February 15, 2000, denying relator's November 19, 1989 request for TTD compensation beginning December 31, 1997, is supported by some evidence. For the reasons that follow, this magistrate finds that relator has not met his burden of proof and is not entitled to a writ of mandamus.
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
As stated previously, in both Chesbrough I and Chesbrough II, this court found that, in its order originally denying relator's request for TTD compensation from October 3, 1995 and dated March 30, 1998, the commission had not sufficiently explained why it found that Dr. Gray's office notes were not persuasive in support of relator's request for TTD compensation beginning October 3, 1995. However, in its decision dated July 27, 2001, the commission did finally explain why those office notes were not found to be persuasive. The following reasons were given: the notes are very difficult to read and nearly illegible; following a page-by-page review of those notes, the commission concluded that Dr. Gray merely discussed relator's condition in ongoing treatment; the notes do not offer any opinion or insight into relator's disability; the notes are purely medical in content and do not reveal whether relator is improving or deriving any benefit from treatment; and the treatments are of such regularity that its leads to the conclusion that relator's condition is not temporary and ultimately lends support to Dr. Gray's January 23, 1996 report indicating that relator had reached MMI. Upon indepen-dent review of those office notes, the commission's explanation is valid. The only question which arises is whether, in all other respects, the commission's July 27, 2001 order meets the requirements of law. This magistrate finds that it does.
Relator contends that the commission cannot apply the standard of MMI with regard to both the 1993 and 1994 claims. Relator asserts that Dr. Gray's January 23, 1996 letter regarding the 1993 claim and stating that relator had reached MMI for the conditions allowed in the 1993 claim cannot apply to the conditions in the 1994 claim. However, upon review of the record and the commission's order, the commission did not do what relator contends.
In its order, the commission stated that all the evidence in the record indicated that relator's conditions being treated by Dr. Gray have not changed since 1996. There is no evidence in the record to support relator's contention that any of his allowed conditions render him temporarily and totally disabled. Instead, as the commission stated, all the evidence indicates that relator's allowed conditions in both claims have been at a state of MMI, or permanency, for an extended period of time and that the evidence submitted by relator was not sufficient to sustain relator's burden of proving that he was entitled to TTD compensation for the time period from October 3, 1995 on.
Relator contends that there is no conflicting medical evidence in the record and that all the evidence is supplied by his doctor. Although that statement is true, relator was required to submit competent, credible medical evidence to support his motion requesting TTD compensation and the commission concluded that relator failed to do so. Upon review of that evidence, this magistrate finds that there is some evidence in the record to support the commission's finding that relator simply has not met his burden of proving entitlement to TTD compensation. The commission based its finding on the entire record and not just on the 1996 letter from Dr. Gray.
Relator has failed to show that the commission abused its discretion in its July 27, 2001 order denying his request for TTD compensation from October 3, 1995 on.
Turning to relator's challenge to the commission's February 15, 2000 order, this magistrate likewise finds that relator has not demonstrated the commission abused its discretion. The commission denied relator's November 19, 1999 request for TTD compensation beginning December 31, 1997, for the following reasons: based upon relator's own persuasive testimony concerning his treatment and a page-by-page review of all Dr. Gray's office notes and C-84s, the commission concluded that relator's allowed conditions had been at a state of MMI since 1994. Upon a review of the record, this magistrate concludes that there is some evidence in the file to support that determination.
Relator again contends, however, that the commission is using Dr. Gray's December 30, 1996 statement that relator had reached MMI with regard to the 1993 claim as support for finding that he has been in a state of MMI for the same time period with regard to the 1994 claim. However, as stated previously, relator is mistaken. The commission reviewed the entire record and reached its own conclusion that relator's conditions had essentially remained unchanged since 1994. Given that fact, on February 15, 2000, the commission concluded that relator had not met his burden of proving an entitlement to TTD compensation beginning December 31, 1997. Again, although the only evidence in the record has been supplied by relator and Dr. Gray, the commission concluded that relator had not met his burden of establishing that he was entitled to the requested compensation. Because the commission's finding is supported by some evidence, this magistrate agrees.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in its orders dated February 15, 2000 (denying his request for TTD compensation from December 31, 1997 on), and July 27, 2001 (denying his request for TTD compensation beginning October 3, 1995). The July 27, 2001 order complies with the decisions of this court in Chesbrough I and Chesbrough II, and otherwise meets the requirements of law. Likewise, the commission's February 15, 2000 order is supported by some evidence and otherwise complies with the law. As such, relator's request for a writ of mandamus should be denied.